UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| KATHERINE HERKENHOFF, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| v. | ) | Case No. 4:13CV1974 SNLJ |
| SUPERVALU STORES, INC. d/b/a SHOP 'N SAVE , et al. | ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on defendants' motion to dismiss the plaintiff's Fourth Amended Complaint (#69). Plaintiff alleges that the defendant pharmacy filled her prescription with a blood pressure medicine instead of her anti-seizure medicine and that she suffered injuries as a result. Plaintiff was required to amend her pleadings before May 15, 2014. She requested leave to file her Third Amended Complaint on June 27, 2014. (#41, #42.) Leave was granted for Plaintiff to file her Third Amended Complaint on August 8, 2014. (#62.) The Court also ordered that the defendants advise whether they intended their then-pending motion to dismiss applied to the Third Amended Complaint or file a new motion. Defendants filed their Motions to Dismiss and supporting Memoranda on August 11, 2014. Plaintiff was ordered to respond to said Motions by August 18, 2014. Instead, on August 19, 2014, plaintiff filed a Fourth Amended Complaint without requesting or obtaining leave of court and without consent of the defendants.

1

The Fourth Amended Complaint includes two counts. Count I is for negligence against all defendants. Count II is for wanton and willful misconduct. Defendants have moved to dismiss again (#69). The defendants have also moved for sanctions based on alleged discovery violations (#59). The motions have been fully briefed and are now ripe for disposition.

## I. Motion to Dismiss (#69)

The motion to dismiss contains several distinct arguments for dismissal.

### A. Failure to Seek Leave of Court for Amendment

First, defendants point out that plaintiff filed her Fourth Amended Complaint without leave of Court. Federal Rule of Civil Procedure 15(a)(2) states that a party may only amend pleadings with the other party's consent or the Court's leave. Here, plaintiff explains that she filed the petition in response to the Court's August 8, 2014 Order, which stated that

> that defendants shall have seven days from the date of this order either to file new Motions to Dismiss in light of the Third Amended Complaint, or to advise the Court and plaintiff that they wish to stand on the arguments made in the Motions to Dismiss (#49, #51) as they apply to the Third Amended Complaint. The plaintiff shall have seven days thereafter in which to file memoranda responding to the Motions to Dismiss and Motion for Sanctions.

(#62 at 9.) Rather than file a memorandum opposing the motion to dismiss, plaintiff apparently responded by filing an amended complaint. Plaintiff states that she now requests leave to file the amended complaint. The Court will allow the amendment and address the motion to dismiss on the merits. The Court is being extremely lenient with

2

plaintiff, particularly in light of plaintiff's record in this case; plaintiff is cautioned that further deadlines must be adhered to.

### B. Rule 12(b)(6) Motion

The purpose of a Rule 12(b)(6) motion to dismiss for failure to state a claim is to test the legal sufficiency of a complaint so as to eliminate those actions "which are fatally flawed in their legal premises and designed to fail, thereby sparing litigants the burden of unnecessary pretrial and trial activity." *Young v. City of St. Charles*, 244 F.3d 623, 627 (8th Cir. 2001) (quoting *Neitzke v. Williams*, 490 U.S. 319, 326-27 (1989)). Although a complaint challenged by a Rule 12(b)(6) motion does not need detailed factual allegations, a petitioner must still provide the grounds for relief, and neither "labels and conclusions" nor "a formulaic recitation of the elements of a cause of action" will suffice. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted). "To survive a motion to dismiss, a claim must be facially plausible, meaning that the 'factual content . . . allows the court to draw the reasonable inference that the respondent is liable for the misconduct alleged.'" *Cole v. Homier Dist. Co., Inc.*, 599 F.3d 856, 861 (8th Cir. 2010) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). The Court must "accept the allegations contained in the complaint as true and draw all reasonable inferences in favor of the nonmoving party." *Id*. (quoting *Coons v. Mineta*, 410 F.3d 1036, 1039 (8th Cir. 2005)). With these principles in mind, the Court turns to the discussion.

### 1. Corporate Defendant

Plaintiff has sued two corporate entities --- Supervalu Stores, Inc., and its subsidiary, Supervalu Pharmacies, Inc. Defendants contend that Supervalu Stores should be dismissed because plaintiff has pleaded no facts against Supervalu Stores other than the fact that it is Supervalu Pharmacies, Inc.'s parent company. Under Missouri law, "two separate corporations act as distinct legal entities, even if one partly or wholly owns stock in the other." *Ritter v. BJC Barnes Jewish Christian Health Sys.*, 987 S.W.2d 377, 384 (Mo. App. E.D. 1999). A parent corporation is thus ordinarily not liable for the tortious acts of its subsidiary. *Id.* The exception to that rule exists when "there is evidence to support a finding which would pierce the corporate veil." *Id.*

Two factors must be met to pierce the corporate veil and disregard corporate forms. First, the corporation must be controlled or influenced by another corporation; second, "there must be evidence that the 'corporate cloak was used as a subterfuge to defeat public convenience, to justify a wrong, or to perpetuate a fraud.'" *Id.* (quoting *Thomas Berkeley Consulting Eng'r, Inc. v. Zerman*, 911 S.W.2d 692, 695–696 (Mo.App. E.D.1995)).

Plaintiff sets forth no such facts here. Instead, the allegations focus solely on the dispensing of allegedly improper medication by the pharmacists, who were employed by Supervalu Pharmacies. Because there are no facts alleged against Supervalu Stores, no claim is stated against defendant Supervalu Stores, and claims against Supervalu Stores will be dismissed.

### 2. Affidavit of Merit

Defendants contend that the complaint should be dismissed because plaintiff has failed to file affidavits regarding medical causation pursuant to § 538.225 RSMo. Plaintiff responds that the affidavits were filed on December 23, 2013 (#12) in connection with plaintiff's motion for reconsideration. Further, plaintiff refiled the affidavits when they filed their response memorandum (#74, #75). Defendants did not take up this matter in their reply memorandum, and the Court presumes that the defendants are satisfied with the affidavits as filed and plaintiff's compliance with § 538.225 RSMo.

### 3. Punitive Damages

Plaintiff's Count II is for "Willful and Wanton Misconduct." Defendants seek dismissal of Count II because it is not permissible to plead an independent cause of action for punitive damages. Indeed, Missouri law does not recognize an independent cause of action for punitive damages; punitive damages must be sought in conjunction with a claim for actual damages. *Sports Capital Holdings (St. Louis), LLC v. Schindler Elevator Corp. & Kone*, No. 4:12CV1108 SNLJ, 2014 WL 1400159, at *8 (E.D. Mo. Apr. 10, 2014) (citing *Misischia v. St. John's Mercy Med. Ctr.*, 30 S.W.3d 848, 866 (Mo. App. E.D. 2000)). Plaintiff concedes that Count II seeks punitive damages, but she argues that because Count II specifically incorporates all the preceding paragraphs of the Complaint --- including Count I's claim for actual damages --- that her punitive damages claim are brought in conjunction with the claim for actual damages.

In Count II, plaintiff has simply added a phrase "intentionally or with reckless

disregard …" to each of the individual claims of negligence in order to allege a basis for punitive damages. However, to "state a claim for punitive damages against a health care provider, a plaintiff's petition must allege facts indicating the defendant willfully, wantonly, or maliciously injured the plaintiff by its tortious act." *Dibrill v. Normandy Associates, Inc.*, 383 S.W.3d 77, 91 (Mo. App. E.D. 2012). Here, no "facts" are alleged, but rather plaintiff simply repeats her allegations of negligence and adds that conclusory language regarding intent or reckless disregard. In the absence of factual allegations showing willful, wonton, or malicious behavior, this Court will dismiss Count II and will not permit plaintiff to amend her complaint for a fifth time.

    **4.**  **Direct Action Against Corporation**

Plaintiff's complaint alleges primarily that Supervalu Pharmacies is liable to her due to the actions of its agents, pharmacists Fred Tichy and Lindsay Reel. The complaint also alleges that defendants failed to monitor and supervise the pharmacists to ensure the proper medication was being provided. (#68 at ¶ 23(c).) However, defendants assert that such a claim for "institutional negligence" against a pharmacy is not cognizable because the corporation does not have the authority to dictate, alter, or affect the professional discretion and judgment of the pharmacist or to interfere with the pharmacist's relationship with the patient. *See, e.g.*, *Downey v. Mitchell*, 835 S.W.2d 554, 556 (Mo. App. E.D. 1992) ("hospital and its employees are not required to interfere with the physician-patient relationship"). Indeed, "negligent supervision implicates the duty of a master to control conduct of a servant." *Gibson v. Brewer*, 952 S.W.2d 239, 247 (Mo. banc 1997). Further, defendants contrast plaintiff's allegations here --- which

defendants say speak only to the actions by professional pharmacists --- with allegations going to the actions by others in the corporation, such as failing to hire a qualified or competent employee. *Cf. LeBlanc v. Research Belton Hosp.*, 278 S.W.3d 201, 207 (Mo. App. W.D. 2008) (holding that the plaintiff had "sufficiently pleaded a claim of corporate negligence … [against a hospital], specifically negligent credentialing.").

Indeed, plaintiff appears to misunderstand the defendants' arguments. Corporations themselves are artificial beings; they can act only through their agents. *See Fowler v. Park Corp.*, 673 S.W.2d 749, 754 (Mo. banc 1984). Plaintiff's insistence that there can be "direct liability" against the corporation appears to miss the point (although, at the same time, plaintiff recognizes that the corporation acts only through its agents (#81 at 2)). In any event, even if there were a cognizable claim against a pharmacy for failure to supervise its pharmacists, the plaintiff has not alleged facts specific enough to be actionable. Plaintiff alleges only that the defendants "fail[ed] to monitor and supervise the pharmacists." (#68 at ¶ 23(c).) Those bare allegations are the mere "labels and conclusions" prohibited by *Twombly*, 550 U.S. at 555, and any claim against the corporation for failure to supervise is insufficient on its face.

### 5. Improper Labeling and Attorneys' Fees

Plaintiff concedes that her clam for improper labeling should be dismissed. Plaintiff also agrees to withdraw her claim for attorneys' fees.

## II. Motion for Sanctions (#59)

Federal Rule of Civil Procedure 37 and this Court's inherent authority permit it to sanction parties for conduct which abuses the judicial process. *See Chambers v. NASCO*,

Inc., 501 U.S. 32, 43 (1991). Defendants seek sanctions against plaintiff because, defendants say, plaintiff willfully obstructed discovery in this matter by withholding facts regarding her past medical history.

Plaintiff claims she sought treatment not only for the broken coccyx (that occurred when the allegedly wrong-supplied medication caused her to fall), but also for back and knee problems following the falls complained of. The two complained-of falls occurred on April 29 and May 15, 2012. Defendants served interrogatories on plaintiff that asked her to disclose all hospitals where she was examined or treated for the ten years before the events described in the complaint. Plaintiff disclosed her treatment by a Dr. Curylo at Mercy Hospital following the 2012 falls, but she did not disclose any medical facilities where she was seen for back problems prior to the alleged falls. Plaintiff's interrogatory responses also reflect that she had no pre-existing injury or medical condition related to her tailbone. Similarly, plaintiff did not disclose any information concerning pre-existing knee problems. At her deposition, plaintiff testified that she never had any pain in her lower back or knees before the falls complained of, and she said she never saw any health care provider for low back pain or knee pain before the 2012 falls.

Defendants state that plaintiffs' medical records tell a different story. Indeed, the medical records show that plaintiff was treated by Dr. Curylo in 2010 for back pain. When confronted with that information at her deposition, plaintiff said she did not remember seeing Dr. Curylo for back pain in 2010 --- she remembered seeing him only once, in 2012. Plaintiff's records also show she was treated for knee pain in 2010; plaintiff remembers the injections, which according to the records occurred in 2010, but

she appears to believe those treatments occurred after the 2012 falls. Plaintiff was adamant in her deposition that she had no memory of back or knee problems before the falls. However, her medical documentation between 2009 and 2011 shows she made numerous complaints to medical care providers regarding back and knee pain before the 2012 falls.

Plaintiff responds in her opposition brief that her medical history is long and complicated and that she is a "simple" woman who merely forgot those incidents and refused to testify that she remembered something she did not remember. Plaintiff's deposition shows she is a woman with myriad health problems --- including several significant psychological problems. However, plaintiff's counsel has not offered evidence why those mental health issues would cause plaintiff to deny being treated multiple times for back and knee pain for years. Plaintiff points out that the fact that Dr. Curylo had seen plaintiff previously for "chronic" back and knee pain was included in Dr. Curylo's records regarding the 2012 visit resulting from the falls. In that case, however, plaintiff's counsel should have discovered plaintiff's previous treatment history on his own.

Plaintiff's failure to explain these discrepancies do not --- at this point --- rise to the level of sanction of dismissal. The Court would, however, entertain monetary sanctions limited to the extra effort expended by defense counsel as a result of the clearly inaccurate discovery responses that plaintiff provided in answers to interrogatories and deposition questions. The answers defendants were given by plaintiff were inconsistent with medical records provided by plaintiff's medical care providers. Had defendants not

9

sought out those other medical records, they might not have learned about her extensive prior medical history going to her back and knee pain (it is not clear to the Court when the 2012 medical records, which hinted at such a history, were provided). In light of these troubling discrepancies and the resulting extra effort required on the part of defense counsel, defendants may file a motion setting forth what monetary sanctions to which they believe they are entitled.

* * * *

Accordingly,

**IT IS HEREBY ORDERED** that the defendants' motion to dismiss (#69) is **GRANTED** in part and **DENIED** in part.

**IT IS FURTHER ORDERED** that defendant Supervalue Stores, Inc. is **DISMISSED**.

**IT IS FURTHER ORDERED** that Count II is **DISMISSED** and plaintiff's claims for failure to supervise, improper labeling, and attorneys' fees are **DISMISSED**.

**IT IS FURTHER ORDERED** that the defendants' motion for sanctions (#59) is **GRANTED** in part and **DENIED** in part; defendants may file a motion seeking reasonable monetary sanctions are set forth in this memorandum.

**IT IS FINALLY ORDERED** that the remaining motions to dismiss earlier versions of the complaint (#49, #51, #63, #65) are **DENIED** as moot.

Dated this 12th day of January, 2015.

_____
STEPHEN N. LIMBAUGH, JR.
UNITED STATES DISTRICT JUDGE